

## State of New Jersey
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
PO BOX 080
TRENTON, NJ  08625-0080

PHILIP D. MURPHY
*Governor*

TAHESHA L. WAY
*Lt. Governor*

MATTHEW J. PLATKIN
*Attorney General*

December 26, 2023

The Honorable Michael A. Shipp, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re: *First Choice Women's Resource Ctrs., Inc. v. Platkin*, No. 3:23-cv-23076

Dear Judge Shipp:

The State writes to request clarification regarding this Court's December 22, 2023 Order (the "Order"). The State apologizes for the timing of this letter; the State is mindful of the holiday period, but is also mindful of the importance of promptly raising clarification requests.

While the Order grants Plaintiff the relief it sought in its TRO application—i.e., it restrains the State from enforcing the subpoena until the Court resolves the preliminary injunction motion— the State is unsure whether the Order is, in fact, a temporary restraining order. The December 22 Order is not styled as a TRO, nor does it include findings regarding Plaintiff's ability to satisfy the stringent requirements for a TRO, including Plaintiff's ability to establish irreparable harm.

As the State explained in the December 20, 2023 submission, *see* Dkt. 17, Plaintiff cannot show irreparable harm—a prerequisite to granting relief. The State has already committed not to request sanctions against Plaintiff in the form of penalties and/or an injunction for non-compliance with the Subpoena, eliminating any threat of economic harm to Plaintiff. The State only wishes to file a subpoena enforcement action in the New Jersey Superior Court, which allows that court to



resolve whatever state-law defenses Plaintiff may raise. Merely having to litigate one's defenses in a court is not irreparable harm. *See FTC v. Standard Oil Co. of Calif.*, 449 U.S. 232, 244 (1980). Given the absence of irreparable harm, Plaintiff is not entitled to a TRO.

Absent a finding by this Court that Plaintiff has met the requirements of a TRO, however, the State is not aware of any other legal basis to restrict the State's ability—under N.J. Stat. Ann. §§ 45:17A-33; 45:1-18; 56:8-3—to seek production of these documents in state court. This Court previously directed the parties to meet and confer regarding whether the parties could agree to any terms under which the State would consent to suspend the return date until after Plaintiff's pending motion is resolved. Unfortunately, the parties did not reach agreement. As laid out in the December 20, 2023 submission, the State was willing to suspend the Subpoena's return date only if Plaintiff agreed to comply with the Subpoena within 30 days after a denial of the relevant motion (should the Court so decide)—without requiring the State to file a state-court subpoena enforcement action. Without such an agreement, the State was unwilling to suspend the Subpoena's return date.[1]

Because there was no agreement, that submission provides no basis for this Court to order a suspension of the return date. In short, a federal court lacks the power to order one party to adhere to its half of an offer to compromise a contested issue where the other party has not agreed to its half of that deal. *Cf. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016) (noting that "[a]n unaccepted settlement offer … is a legal nullity, with no operative effect," because "the recipient's rejection of an offer leaves the matter as if no offer had ever been made"). And ordering one party to follow its half of an unaccepted settlement offer risks disincentivizing parties from making written offers in the first place.

The December 22 Order suggests the issue of whether Plaintiff may raise separate state-law defenses in a future, separate state-court proceeding is not yet "ripe." *See* Order at 1-2 (noting parties' dispute and observing that whether Plaintiff can raise subsequent state-law defenses if it loses the PI application "may or may not manifest"). But even if the Court denies the PI, it will not have the authority to prohibit Plaintiff from raising state-law defenses in state court.  And so it will never be "ripe" for this Court to order Plaintiff not to raise separate state-law defenses. That is why the State sought to reach *mutual* agreement with Plaintiff, but was unable to do so.

---

[1] The State had a good reason for pairing these promises: if Plaintiff raises state-law objections, the State wishes to litigate the various defenses simultaneously, to avoid a scenario in which the State's access to the documents is further delayed by litigating federal defenses first followed by a litigation of state-law defenses. Had Plaintiff raised federal-law and state-law defenses in a single motion to quash, all such defenses would have been litigated simultaneously.

Finally, suspending the Subpoena compliance date would significantly prejudice the State. Even on a swift timeline, the pending PI motion will not be fully briefed until late February; no decision will likely issue until March or April; and emergency applications to the appellate courts might not conclude until June. The State therefore could not even initiate a subpoena-enforcement action until July, followed by months of state-law litigation in state court. Despite a Subpoena return date of December 2023, Plaintiff would avoid compliance until Fall 2024. That is a heads-I-win-tails-you-lose scenario for Plaintiff: even if federal courts uniformly reject Plaintiff's federal arguments, merely filing this lawsuit will have won Plaintiff nearly a year of delay.

Given the holidays, the State has no objection to the suspension remaining in place while opposing counsel responds and while this Court considers the letter. The State would also welcome any opportunity to discuss further at a status conference, including in the new year.

Respectfully yours,

By:  /s/  Angela Cai
Angela Cai
Deputy Solicitor General
Counsel for Defendant

CC: All counsel via ECF