Lincoln Davis Wilson (N.J. Bar No. 02011-2008)
Timothy A. Garrison*
Gabriella McIntyre*
Mercer Martin*
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
lwilson@ADFLegal.org
tgarrison@ADFLegal.org
gmcintyre@ADFLegal.org
mmartin@ADFLegal.org

*Counsel for Plaintiff*
*Motion for pro hac vice admission pending*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| **FIRST CHOICE WOMEN'S RESOURCE CENTERS, INC.,** | Civil Action File No.: 3:23-cv-23076 |
| *Plaintiff,* | **REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR INTERIM RELIEF** |
| v. | |
| **MATTHEW PLATKIN**, in his official capacity as Attorney General for the State of New Jersey, | ORAL ARGUMENT REQUESTED |
| *Defendant.* | *Document Filed Electronically* |

## **<u>TABLE OF CONTENTS</u>**

Table of Authorities .................................................................................. ii

Introduction ............................................................................................1

Argument..................................................................................................3

I.    The Court Should Grant a Docket-Management Stay of Enforcement..............3

II.   The Court Should Grant a TRO Against the Subpoena. ...................................7

      A.   Irreparable Harm to First Choice Outweighs Any to AG Platkin...........7

      B.   First Choice Is Likely to Succeed on the Merits. ...................................10

Conclusion ...............................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Citizens For A Better Lawnside, Inc. v. Bryant*,
No. CIV 05-4286 RBK, 2007 WL 1557479, (D.N.J. May 24, 2007) ............9

*Crosley Corporation v. Hazeltine Corporation*,
122 F.2d 925 (3d Cir. 1941) ................................................................ 2, 4, 5

*E.E.O.C. v. University of Pennsylvania*,
850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990)...............................4

*Estate of Maglioli v. Andover Subacute Rehabilitation Center I*,
No. CV 21-2114(KM)(JBC), 2021 WL 2525714 (D.N.J. June 18, 2021)......7

*Exxon Mobil v. Schneiderman*,
316 F. Supp. 3d 679 (S.D.N.Y. 2018) ..........................................................14

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
131 F. Supp. 2d 540, (S.D.N.Y. 2001) ..........................................................8

*First Puerto Rican Festival of New Jersey, Inc. v. City of Vineland*,
108 F. Supp. 2d 392 (D.N.J. 1998)..................................................................9

*FTC v. Standard Oil Company of California*,
449 U.S. 232 (1980)......................................................................................7, 8

*Greater Philadelphia Chamber of Commerce v. City of Philadelphia*,
949 F.3d 116 (3d Cir. 2020) .........................................................................14

*Grode v. Mutual Fire, Marine & Inland Insurance Company*,
8 F.3d 953 (3d Cir. 1993) ...............................................................................4

*Hampton Hospital v. Bresan*,
288 N.J. Super. 372 (App. Div. 1996).........................................................15

*Hohe v. Casey*,
868 F.2d 69 (3d Cir. 1989) .............................................................................9

*In re Diet Drugs*,
282 F.3d 220 (3d Cir. 2002).........................................................................5, 6

*In re Fine Paper Antitrust Litigation*,
        685 F.2d 810 (3d Cir. 1982) ............................................................................3

*In re Grand Jury Subpoena*,
        646 F.2d 963 (5th Cir. 1981) ...........................................................................4

*In re Revel AC, Inc.*,
        802 F.3d 558 (3d Cir. 2015) ....................................................................... 2, 10

*Jock v. Sterling Jewelers, Inc.*,
        738 F. Supp. 2d 445 (S.D.N.Y. 2010) .............................................................7

*Lawson v. Praxair, Inc.*,
        No. CV 16-2435(ZNQ)(DEA), 2021 WL 12102369 (D.N.J. June 30, 2021).3

*Lewis v. Younger*,
        No. CV 76-1890-RF, 1976 WL 1383, (C.D. Cal. July 21, 1976) ..................8

*Liberty Mutual Insurance Company v. Ward Trucking Corporation*,
        No. CIV.A. 93-CV-3154, 1994 WL 111374 (E.D. Pa. Mar. 31, 1994), *aff'd*,
        47 F.3d 1161 (3d Cir. 1995) ............................................................................4

*Obria Group Inc. v. Ferguson*,
        No. 3:23-cv-06093 (W.D. Wash.) ...................................................................11

*People v. Heartbeat International, Inc.*,
        No. 23CV044940 (Cal. Sup. Ct.)....................................................................11

*Platkin v. Smith & Wesson Sales Co., Inc.*,
        474 N.J. Super. 476 (App. Div. 2023)..............................................................6

*Reilly v. City of Harrisburg*,
        858 F.3d 173 (3d Cir. 2017) ..........................................................................10

*Republican National Committee v. Pelosi*,
        No. CV 22-659 (TJK), 2022 WL 1604670, (D.D.C. May 20, 2022).............8

*Sensient Colors Inc. v. Allstate Insurance Company*,
        193 N.J. 373 (2008) .........................................................................................4

*Smith & Wesson Brands, Inc. v. Attorney General of New Jersey*,
        27 F.4th 886 (3d Cir. 2022) .............................................................................6

*Smith & Wesson Brands, Inc. v. Attorney General of New Jersey*,
 No. 23-1223 (3d Cir., argued Nov. 15, 2023) ..................................... 6, 8, 10

*White v. Lee*,
 227 F.3d 1214 (9th Cir. 2000) ........................................................................9

*World Group Securities v. Tiu*,
 No. CV 03-2609, 2003 WL 26119461 (C.D. Cal. July 22, 2003) .................7

## **Statutes**

28 U.S.C. § 1651, 'All Writs Act'...............................................................................5

N.J. Stat. § 56:8-2
 New Jersey Consumer Fraud Act ("NJCFA").................................... 6, 11, 15

## **INTRODUCTION**

Attorney General Platkin's opposition brief reinforces that his Subpoena of more than a decade of information about First Choice's donors, employees, and operations is driven by his hostility to its Christian, pro-life speech. He has finally disclosed the basis for his investigation: it began not based on a complaint, or on anything First Choice said, but on what *other* attorneys general said about *other* organizations that share this religious pro-life message. He does not identify any false statement that First Choice has made to anyone, much less a false statement that would trigger his investigatory authority. Instead, he is the one who makes false statements: he claims that First Choice "conceals" from clients that it does not provide abortions, when in fact *every page* of its client websites says so clearly. His other complaints about First Choice underscore the speech-driven character of his investigation. He says that First Choice maintains separate client and donor websites, but that is equally true of pro-abortion organizations like Planned Parenthood. Yet AG Platkin has not investigated Planned Parenthood—instead, he asked it for help to go after pregnancy centers like First Choice.

Still, the Court need not make any findings about the merits to forbid AG Platkin from filing a state-court action to enforce the Subpoena while the Court considers First Choice's motion to enjoin it. This is so for two reasons.

1

*First*, the Court should, as a matter of its docket management authority, prohibit AG Platkin from initiating a wasteful and potentially inconsistent parallel proceeding in state court over the legality of the same Subpoena. The Court's comments focused on these practical case management concerns, yet AG Platkin limits them to a single unsupported footnote where he says they don't apply. Not so. The Third Circuit has long held that a federal court may "enjoin parties before it from proceeding in another court in a controversy involving the same issues." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 928 (3d Cir. 1941). This simple efficiency principle allows this Court to prohibit AG Platkin from filing a conflicting action.

*Second*, the record provides ample ground for a TRO. In addition to the unrebutted speech, religion, and association harms laid out in First Choice's verified complaint, requiring it to defend against a potentially conflicting parallel state-court proceeding is irreparable harm. And the only purported harm AG Platkin identifies from delaying his request for documents—incentivizing federal challenges to state subpoenas—is neither irreparable nor harm. Where irreparable harm to the movant so "decidedly outweighs any potential harm" to the opposing party, the Court need only find "serious questions going to the merits" to grant a TRO. *In re Revel AC, Inc.*, 802 F.3d 558, 570 (3d Cir. 2015) (quotation omitted). Even so, First Choice is likely to prevail on the merits. The thin factual basis for AG Platkin's investigation

does not provide any statutory ground to investigate First Choice under state law. And AG Platkin does not and cannot show that he enforces the same laws against similarly situated organizations—like Planned Parenthood—who do not share First Choice's pro-life message.

AG Platkin's past litigation conduct shows that his aggressive plan to commence immediate enforcement of the Subpoena threatens to undermine this Court's ability to adjudicate First Choice's challenge. That matters not just to First Choice, but to any organization that would challenge an elected official's attempt to mount an unlawful fishing expedition to retaliate against unpopular speech. Whether as a matter of efficiency or under a TRO, the Court should enjoin enforcement of the Subpoena while it decides the preliminary injunction motion.

## ARGUMENT

### I.    The Court Should Grant a Docket-Management Stay of Enforcement.

This Court may grant First Choice's requested interim relief through its general case management authority. "The Court has broad discretion to manage discovery, control its docket, and make case management decisions." *Lawson v. Praxair, Inc.*, No. CV 16-2435(ZNQ)(DEA), 2021 WL 12102369, at *3 (D.N.J. June 30, 2021); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982). The Court may exercise its authority to set deadlines for the efficient administration of the case to extend the return date of the state Subpoena and the documents it calls

for—a *res* over which the Court has jurisdiction. *See In re Grand Jury Subpoena*, 646 F.2d 963, 969 n.5 (5th Cir. 1981).

That general case management authority includes the power to make orders to prevent duplicative litigation. *Crosley*, 122 F.2d at 928; *Sensient Colors Inc. v. Allstate Ins. Co.*, 193 N.J. 373, 386 (2008). "It is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions" by different courts. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 974 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) (quoting *Crosley*, 122 F.2d at 930). And where two proceedings are filed concerning the same matter, the first takes priority. *Crosley*, 122 F.2d at 930. By deferring to the case filed first, courts avoid "[s]imultaneous litigation of [a] dispute in federal and state court[,]" which would be "an inefficient use of judicial resources." *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, No. CIV.A. 93-CV-3154, 1994 WL 111374, at *4 (E.D. Pa. Mar. 31, 1994), *aff'd*, 47 F.3d 1161 (3d Cir. 1995).

Those principles apply directly here. By seeking to adjudicate its federal constitutional claims in federal court, First Choice made "a choice [that] cannot be properly denied." *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 958 (3d Cir. 1993) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358–59 (1989)). Yet a state enforcement proceeding threatens that choice

and judicial efficiency, since First Choice will almost certainly raise as defenses the same federal issues it brought in this case.

While the application of these basic case-management principles has been the focal point of discussion at the Court's hearings and in the parties' prior briefing, *see*, *e.g.*, ECF No. 17 at 2–3. AG Platkin gives it scarcely a word in his opposition. In fact, he addresses it only in a footnote at the end of his response, where he contends, without citing any authority, that these principles only allow "a court to stay the proceeding before it, not the proceeding before a separate tribunal." *See* ECF No. 24 at 44, n.5. Not so. In addition to staying the proceeding before it, the Third Circuit has long affirmed that a federal court may properly "enjoin parties before it from proceeding in another court in a controversy involving the same issues[.]" *Crosley*, 122 F.2d at 928. Even if a party proceeds with filing a second action in state court, Federal courts may invoke the All Writs Act to enjoin that action if it "threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation." *In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002). That is precisely what AG Platkin proposes to do here: file a duplicative second action over the same Subpoena in state court where the issues will necessarily overlap—and interfere— with this Court's consideration of the controversy over the same *res*. *See id*. at 236.

AG Platkin's litigation practice in similar matters shows that parallel proceedings are likely to create the same troubling state/federal jurisdictional

conflicts over the legality of the Subpoena that the Third Circuit enjoined in *Diet Drugs*. For example, *Platkin v. Smith & Wesson Sales Co., Inc.* concerned the Attorney General's subpoena for documents from Smith & Wesson under the New Jersey Consumer Fraud Act ("NJCFA") and other statutes. 474 N.J. Super. 476, 481 (App. Div. 2023). After Smith & Wesson filed a challenge in federal court, *id.* at 482–83, the Attorney General filed a competing enforcement proceeding in state court that reached judgment first and required enforcement. *Id.* at 498. Smith & Wesson then moved in federal court to suspend enforcement of the subpoena pending resolution of its constitutional claims, but the federal court abstained. *Id.* The Third Circuit reversed, finding the *Younger* abstention doctrine inapplicable. *See Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 890 (3d Cir. 2022). On remand, the district court again dismissed the case under res judicata, and Smith & Wesson filed an appeal, which is fully briefed and argued. *See Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, No. 23-1223 (3d Cir., argued Nov. 15, 2023) (Chagares, C.J., Matey & Fuentes, J.J.). Avoiding a similarly messy conflict of jurisdiction here fully warrants this Court's exercise of its case management and statutory authority to extend the return date of the Subpoena and/or order the Attorney General not to commence state-court enforcement proceedings while the preliminary injunction motion is pending.

II.     **The Court Should Grant a TRO Against the Subpoena.**

A.     **Irreparable Harm to First Choice Outweighs Any Harm to AG Platkin.**

The balance of harms weighs decidedly in favor of First Choice, which will experience irreparable injury on multiple fronts without a TRO. For one, First Choice will have to litigate the same issues in conflicting proceedings in state and federal court. As other courts in this District have held, "the burden of simultaneously litigating the same issues" in both state and federal court and the risk of "expos[ure] to inconsistent outcomes[]" constitutes irreparable harm. *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, No. CV 21-2114(KM)(JBC), 2021 WL 2525714, at *6 (D.N.J. June 18, 2021) (McNulty, J.) (collecting cases); *accord Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 448 (S.D.N.Y. 2010); *World Grp. Sec. v. Tiu*, No. CV 03-2609, 2003 WL 26119461, at *7 (C.D. Cal. July 22, 2003). This principle is particularly clear in light of the web of conflicting judgments that AG Platkin's parallel subpoena enforcement action has caused and is causing in *Smith & Wesson*.

AG Platkin says the Supreme Court "squarely rejected" this theory of parallel litigation as irreparable harm in *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980). ECF No. 24 at 14. But that case did nothing of the sort. *FTC* involved the *exact opposite* scenario of this case—not an attempt to avoid multiple inconsistent proceedings, but rather to create them. In *FTC*, a defendant to administrative

7

proceedings sought to file a federal court challenge while the administrative proceedings were pending. 449 U.S. at 244. The Supreme Court declined to allow this "interference" of a second proceeding before a decision in the administrative proceedings, noting that it would lead to "inefficient" or "unnecessary" "piecemeal review[.]" *Id.* at 242. Thus, the Supreme Court held that the "litigation expense" of the first proceeding was not irreparable harm that would justify filing the second. *Id.* at 244. That has no bearing on First Choice, which seeks to avoid, not create, a second proceeding.

A second proceeding would cause First Choice irreparable harm. *See, e.g.*, *Smith & Wesson*, 27 F.4th at 890. It would divert First Choice's limited resources and severely limit its ability to carry out its mission, ECF No. 1 at ¶¶ 72–74, as well as harm its associational interests by alienating donors, officers, employees, volunteers, and vendors through fear of retaliation and public disclosure, *id.* at ¶¶ 75–79. Numerous courts have thus found that the heavy burdens of compliance with a broad subpoena cause irreparable harm. *See, e.g.*, *First City, Texas-Houston, N.A. v. Rafidain Bank*, 131 F. Supp. 2d 540, 543 (S.D.N.Y. 2001); *Lewis v. Younger*, No. CV 76-1890-RF, 1976 WL 1383, at *2 (C.D. Cal. July 21, 1976); *Republican Nat'l Comm. v. Pelosi*, No. CV 22-659 (TJK), 2022 WL 1604670, at *4 (D.D.C. May 20, 2022). The same is true here.

Beyond these practical harms, First Choice has proffered an unrebutted factual showing that enforcement of the Subpoena in a state-court proceeding would irreparably harm its speech, religion, and association rights. AG Platkin cites the Third Circuit's statement in *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989), that "[c]onstitutional harm is not necessarily synonymous with . . . irreparable harm[,]" ECF No. 24 at 17, but he omits the ultimate holding of that case: that showing "a chilling effect on free expression" is irreparable harm. 868 F.2d at 73; *accord First Puerto Rican Festival of N.J., Inc. v. City of Vineland*, 108 F. Supp. 2d 392, 395 (D.N.J. 1998) (quotation omitted). First Choice has easily made that showing here with the detailed, sworn averments in its verified complaint about the chilling of its speech, religion, and association rights. ECF No. 1 at ¶¶ 71–79; *see, e.g.*, *Citizens For A Better Lawnside, Inc. v. Bryant*, No. CIV 05-4286 RBK, 2007 WL 1557479, at *5 (D.N.J. May 24, 2007); *White v. Lee*, 227 F.3d 1214, 1228–29 (9th Cir. 2000). And AG Platkin fails to dispute or rebut that testimony at all.

In contrast to these many harms to First Choice, AG Platkin suffers no irreparable harm in having to wait for documents to pursue an organization that has been peacefully operating in New Jersey for 40 years. A judicial decision that might incentivize lawful federal challenges to state subpoenas is not irreparable harm. Nor does he need these documents to protect the public interest, but without any false statements by First Choice, much less false statements tethered to his lawful

9

investigatory powers, he fails to show any non-speculative harm from putting his fishing expedition on hold. And while AG Platkin says he would not require First Choice to comply with a state-court production order until this Court decides the preliminary injunction motion, that is cold comfort given the convoluted jurisdictional conflicts caused by that approach in *Smith & Wesson*. The balance of harms tips sharply in favor of First Choice.

### B.  First Choice Is Likely to Succeed on the Merits.

The question of the merits is easily resolved. Because the irreparable harm to First Choice so decidedly outweighs AG Platkin's frustrations about delayed document production, a TRO only requires a finding of "serious questions going to the merits," which this case plainly meets. *In re Revel*, 802 F.3d at 569–70 (quotation omitted). But in any event, First Choice has shown a likelihood of success: "a reasonable probability of eventual success in the litigation," which means "significantly better than negligible[,]" not "more likely than not." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176, 179 (3d Cir. 2017) (quotation omitted). In fact, AG Platkin's opposition brief only provides more support for First Choice's First and Fourth Amendment claims that this investigation is driven not by evidence of violations of state law, but by animus against First Choice's Christian, pro-life speech. ECF No. 5-1 at 24, 28.

At the heart of AG Platkin's broad subpoena is his objection that pregnancy centers do not offer abortions. His crusade against pro-life pregnancy centers began with the Consumer Alert he issued against them. He framed the Alert under his consumer protection authority under the NJCFA, even though most pregnancy centers, including First Choice, are nonprofits that do not charge for their services. ECF No. 1 at ¶ 22. Next, he got Planned Parenthood to help him formulate the terms of the warnings in the Alert. *Id.* at ¶ 58. And he joined with several other state attorneys general in an open letter condemning pro-life pregnancy centers. ECF No. 5-1 at 19.

AG Platkin then relied on the corporate hostility of this group of attorneys general to justify this investigation. He cited "actions taken by other jurisdictions" against pro-life pregnancy centers for purportedly "misleading donors and potential clients . . . into believing that they provide . . . abortion care" as his basis for investigating First Choice. ECF No. 24 at 6. But no judicial decisions have been rendered in those other actions—rather, they are subject to challenge for the same reasons as this case. *People v. Heartbeat Int'l, Inc.*, No. 23CV044940 (Cal. Sup. Ct.); *Obria Grp. Inc. v. Ferguson*, No. 3:23-cv-06093 (W.D. Wash.). California and Washington's unlawful discrimination against pregnancy centers does not authorize similarly unlawful discrimination by New Jersey.

11

That this investigation is motivated by hostility to these Christian pro-life viewpoints is even more clear from AG Platkin's preliminary investigation of First Choice, which found nothing of significance. The "initial evidence" provided includes that investigators (1) reviewed First Choice's registration with the State (citing no discrepancies); (2) discovered that First Choice operates a website oriented toward supporters and others oriented toward potential clients; (3) called First Choice and were informed that they have nurses on staff and doctors who oversee medical services; (4) surreptitiously visited a First Choice facility and were told that a doctor was not then at the facility; and (5) learned that First Choice asks clients to confirm they are pregnant before discussing abortion with them. ECF No. 24 at 6–9. None of this even suggests, much less shows, a false or misleading statement that would give AG Platkin any basis to serve a formal subpoena.

AG Platkin says there is a conflict between First Choice's websites that warrants investigation—that the donor and volunteer website refers to its "'pro-life' mission" and desire to "protect the unborn," while the client websites "conceal" that fact. *Id.* at 7–8. But that just isn't true. AG Platkin omits the inconvenient fact that *every* single page of the client websites states that "First Choice Women's Resource Centers is an abortion clinic alternative that does not perform or refer for termination services" (https://1stchoice.org/) or "[w]e do not perform or refer women for elective abortions" (https://firstchoicewomancenter.com/). So even if First Choice were

12

subject to some duty to disclose the services it does not offer (and it is not), it would provide no basis for AG Platkin to investigate here.

Even more boldly, after explaining for the first time that this difference in websites is the primary basis for his investigation, AG Platkin says that First Choice's claims fail because it "points to no 'comparable secular' entity that has . . . published divergent statements regarding its conduct across websites that raise comparable concerns regarding consumer, client, and donor fraud." ECF No. 24 at 33. Aside from the fact that nothing about First Choice's websites raises concerns about fraud of any kind, it is quite easy to identify a "comparable secular" entity: Planned Parenthood does the same thing, with one site telling donors that their donations will be used to help "reform the federal courts" to support abortion rights (https://www.plannedparenthoodaction.org/), while the client-oriented website focuses on the services Planned Parenthood provides (https://www.plannedparenthood.org/). And like the First Choice websites, the Planned Parenthood sites also features images of medical personnel in white lab coats dispensing medication, wearing a white lab coat and stethoscope, and wearing a white lab coat while conducting telehealth consultations.

To defend his relationship with a comparable organization he has declined to investigate, AG Platkin argues that "meeting with advocates [is] not enough to establish an improper motive." ECF No. 24 at 32 (citing *Exxon Mobil v.*

13

*Schneiderman*, 316 F. Supp. 3d 679, 711 (S.D.N.Y. 2018)). True, but it does not fairly capture the extent of Planned Parenthood's involvement: AG Platkin invited Planned Parenthood to help him draft his legal framework to pursue pregnancy centers. ECF No. 1 at ¶¶ 58–63. Nor is Planned Parenthood a mere "advocate"; it is a directly comparable secular organization with opposing views about the same services. This was not "meeting with advocates," it was an umpire ignoring strikes by the Red Sox while asking them to help him make calls against the Yankees.

AG Platkin's focus on viewpoint is also clear from the Subpoena's emphasis on statements about Abortion Pill Reversal, *id.* at ¶ 69, which AG Platkin does not attempt to show were false. Instead, he tries to shift the burden by saying that "the veracity of First Choice's claims regarding 'Abortion Pill Reversal' (APR) support an inquiry" into whether anyone was misled. ECF No. 24 at 34 n.4. But the notion that speakers have some general obligation to prove to the state that their statements were true and that no one was misled by them is antithetical to the Constitution's free speech guarantee. Rather, the burden is on the government: AG Platkin must show some reason to think First Choice's statements were false and that consumers were misled by them. *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020). But he does not contend any statements were false or that consumers protected by the NJCFA even saw them, much less were misled.

14

Finally, AG Platkin's brief also undermines his ability to show that any of the statutes he invokes give him authority to investigate First Choice. He emphasizes that the NJCFA covers representations related to the "sale" of "merchandise," ECF No. 24 at 4 (citing N.J.S.A. § 56:8-2), but makes no attempt to show that a nonprofit's provision of free pregnancy services meets those definitions. *See Hampton Hosp. v. Bresan*, 288 N.J. Super. 372, 383 (App. Div. 1996). He tries to argue that the Court may ignore vagueness and overbreadth concerns with the CRIA because the statute applies constitutionally here, ECF No. 24 at 28, but he does not identify any false statements First Choice made here, much less a false statement in its charitable registration statement. *Id.* at 6–10. And while he suggests that a variety of investigatory provisions of the Professions and Occupations law may apply, he fails to flag statements by First Choice that fall afoul of any of them. *Id.*

The absence of any valid statutory basis for this investigation both shows that his Subpoena violates the First and Fourth Amendments and that its animating purpose was hostility to First Choice's religious speech. And yet despite this open hostility, AG Platkin is quite frank that he wants to enforce this Subpoena so he can obtain detailed and sensitive information about this nonprofit, including the identity of its donors. ECF No. 24. at 34. The Subpoena is overly burdensome and unlawful. First Choice is likely to prevail on its challenge to it. The Court should grant it interim relief.

## **<u>CONCLUSION</u>**

The Court should grant First Choice interim relief against enforcement of the

Subpoena pending a ruling on the preliminary injunction motion.

Dated: January 9, 2023                    Respectfully submitted,

                                          */s/ Lincoln Davis Wilson*
                                          Lincoln Davis Wilson (N.J. 02011-2008)
                                          Timothy A. Garrison*
                                          Gabriella McIntyre*
                                          Mercer Martin*
                                          ALLIANCE DEFENDING FREEDOM
                                          440 First Street NW, Suite 600
                                          Washington, DC 20001
                                          Telephone: (202) 393-8690
                                          Facsimile: (202) 347-3622
                                          lwilson@ADFLegal.org
                                          tgarrison@ADFLegal.org
                                          gmcintyre@ADFLegal.org
                                          mmartin@ADFLegal.org

                                          *Counsel for Plaintiff*

                                          *\*Motion for pro hac vice admission filed*