Michael S. Barth
P.O. Box 832
Far Hills, New Jersey 07931

August 2, 2024

The Honorable Michael A. Shipp, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Trenton, NJ 08608

RECEIVED

AUG 0 5 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

Re: *First Choice Women's Resource Ctrs., Inc. v. Platkin*, No. 3:23-cv-23076

Dear Judge Shipp,

If the public filing of this document "moots" Movant's Motion, then please file under Court Protective Order.

Please accept this letter memorandum in lieu of a more formal brief in support of this Non-Party's Motions in the above referenced matter to Intervene to Quash With Prejudice, the unlawful Administrative Subpoena Duces Tecum (ECF No. 44-2 para 11) of Matthew Platkin, Attorney General of the State of New Jersey (Defendant or Attorney General) who unlawfully seeks "among other things" the constitutionally protected list of donors to First Choice Woman's Resource Center, Inc. (Plaintiff or First Choice.)

Defendant's so called "administrative subpoena" unlawfully seeks constitutionally protected information concerning donor contributions to First Choice. (ECF No. 1 § 76.)

Abortion is controversial in the United States, as the Plaintiff notes the Attorney General becoming increasingly incensed since the Supreme Court decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). (Reference omitted.) Presumably the *Dobbs* dissent agreed with the following written by Justice Alito:

> "Abortion presents a profound moral issue on which Americans hold sharply conflicting views. Some believe fervently that a human person comes into being at conception and that abortion ends an innocent life. Others feel just as strongly that any regulation of abortion invades a woman's right to control her own body and prevents women from achieving full equality. Still others in a third group think that abortion should be allowed under some but not all circumstances, and those within this group hold a variety of views about the particular restrictions that should be imposed." *Id. at* 223–25.

*Dobbs* rejects the Attorney General's extremist statement that there is a fundamental right to an abortion in the U.S. Constitution. *Id* ("The Constitution does not confer a right to abortion.") (Reference to video omitted.)

*National Rifle Association* rejects the type of Attorney General's extremist defamatory and libelous type statements that an organization as First Choice is an "extremist organization" and

1

the Supreme Court also rejected the Attorney General's attempt to alienate its donors by labeling them the same. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 184 (2024). (Reference omitted.)

A mission of First Choice is to provide information on giving birth to life, and clearly the distorted personal mission of the Attorney General pro-abortion extremist is to deny life and attempt to silence First Choice and its donors.

FBI Director Christoper Wray recently testified to the House Judiciary Committee that the FBI is investigating pro-abortion extremist since the overturning of *Roe v. Wade* in 2022. Peter Pidedo, *FBI Director Denies Targeting Pro Life Activists*, National Catholic Register, July 25, 2024.

To the extent the record clearly shows the Attorney General is an pro-abortion extremist, the Court should appoint a Rule 53 Special Master to investigate the extreme nature of the Attorney General in this matter and refer him to the FBI for investigation consistent with the Bureau's investigation of pro-abortion extremists.

The underlying principles to the removal statute under 28 U.S.C. 1441 addresses concerns that a state court may be biased or prejudice. The extreme nature of the Attorney General in this matter only compounds those concerns about litigation in a state court. Here if the Superior Court Judge would rule against the New Jersey Attorney General on the topic, her Honor's legal career would be finished, just as the Attorney General and many other pro-abortion extremists attack the United States Supreme Court and in effect seek the removal the Justices for issuing *Dobbs*.

Federal Rule of Civil Procedure 24 sets forth the requirements for both interventions as of right and permissive intervention. Rule 24(a) states:

> "the [C]ourt must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Rule 24(b) states: "the [C]ourt may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."

Federal Rule of Civil Procedure 24(b)(1)(A) has been criticized as incoherent. *PrimeSource Bldg. Prod., Inc. v. United States,* 494 F. Supp. 3d 1307, 1328 (Ct. Int'l Trade 2021) The structure of standing law in the federal courts has also long been criticized as incoherent. *State v. Becerra*, 544 F. Supp. 3d 1241, 1251 (M.D. Fla. 2021) *quoting* William Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 221 (1988)

Federal Rule of Civil Procedure 45 (d) (3) identifies circumstances when a court is required to quash a subpoena. The rule states:

"The subpoena power is a substantial delegation of power… and those who invoke it have a grave responsibility to ensure it is not abused." *Theofel v. Farey-JonesI,* 359 F.3d 1066, 1074 (9th Cir. 2004). The Attorney General did not meet that responsibility here. The burden of issuing the subpoena is on the Attorney General who failed to meet that burden. The Attorney General has yet to justify why the State, or he himself in his individual capacity needs the list of donors.

The Attorney General going after Donors defies logic as the Donors' interests should have already been protected and the Attorney General's actions should not have gone this far considering the Supreme Court's protection of donors in *Americans for Prosperity Found, v. Bonda,* 594 U.S. 595 (2021). Ironically in that consolidated case Vice President Kamala Harris, then California's Attorney General, cost the state nearly three million dollars in attorney fees and approximately seventy-seven thousand dollars in costs for targeting donors. *Thomas More L. Ctr. V. Bonta,* 2:15-cv-03048, 2022 WL 971946 (C.D. Cal. Mar. 28, 2022).

While the Court here is not tasked with redefining moral law, the Court could take Judicial Notice that opposition to abortion (or supporting a family's right to give birth) is both a religious and non-religious issue as opposition to abortion is shared among others by Atheists, Christians, Jews, and Muslims. (References omitted.) Movant will defer to the Attorney General about the position of Satanist and Pagan "religions." *C.f.,* Sarah A. Rumage, *Resisting the West: The Clinton Administration's Promotion of Abortion at the 1994 Cairo Conference and the Strength of the Islamic Response,* 27 Cal. W. Int'l L.J. 1, 100 (1996) *citing* Alfred G. Boylan, Of Ferraro, Cuomo, and Moral Issues Confused with Dogma (Letter to the Editor), N.Y. Times, Sept. 9, 1984, at D24. ("Opposition to abortion is not a religious belief. It is one of many moral issues which the Catholic Church has taken a stand on-as have other faiths and other groups with no Catholic connection.") This is not to suggest that the subpoena does not violate the right to freedom of expression of religion for many as the subpoena does violate religious liberties.

In *Roe v. Wade,* abortion meant "the termination of human pregnancy with an intention other than to produce a live birth or to remove a dead fetus." (Reference omitted.) An abortionist killing a live fetus and then removing the dead fetus he or she just killed does not mean its not an abortion, even if legally it should be classified as a more serious offense. Regardless of whether or not "some abortions" are cruel, they are not unusual considering one statistic that 625,978 abortions were reported to the CDC for 2021. *Morbidity and Mortality Weekly Report*, Surveillance Summaries, cdc.gov, November 24, 2023. Ironically the number of "reported" abortions is not far from the leading cause of death as 702,880 people died of heart disease in the United States in 2022. *Heart Disease in the United States*, cdc.gov, May 15, 2024, the latter much time and effort that the Medical field attempts to prevent deaths from happening, the former the attorney general much time and effort spent to ensure more deaths happen.

Since the Attorney General raises the issue, it is not clear why the truth about abortions "hurts so much" to the point that the Attorney General does not want the public to have access to information about the obvious, but the Attorney General would rather try and silence organizations such as First Choice and its donors, particularly since the Courts have recognized the harsh realities of partial birth abortion where it does not appear vague: "the abortionist takes a pair of scissors and inserts the scissors into the back of the skull and then opens the scissors up to make a gap in the back of the skull in order to insert a catheter to literally suck the brains from

4

Michael S. Barth
P.O. Box 832
Far Hills, New Jersey 07931

August 2, 2024

The Honorable Michael A. Shipp, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street Trenton, NJ 08608

RECEIVED

AUG 0 5 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

Re: *First Choice Women's Resource Ctrs., Inc. v. Platkin*, No. 3:23-cv-23076

Dear Judge Shipp,

If the public filing of this document "moots" Movant's Motion, then please file under Court Protective Order.

Please accept this letter memorandum in lieu of a more formal brief in support of this Non-Party's Motions in the above referenced matter to Intervene to Quash With Prejudice, the unlawful Administrative Subpoena Duces Tecum (ECF No. 44-2 para 11) of Matthew Platkin, Attorney General of the State of New Jersey (Defendant or Attorney General) who unlawfully seeks "among other things" the constitutionally protected list of donors to First Choice Woman's Resource Center, Inc. (Plaintiff or First Choice.)

Defendant's so called "administrative subpoena" unlawfully seeks constitutionally protected information concerning donor contributions to First Choice. (ECF No. 1 § 76.)

Abortion is controversial in the United States, as the Plaintiff notes the Attorney General becoming increasingly incensed since the Supreme Court decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). (Reference omitted.) Presumably the *Dobbs* dissent agreed with the following written by Justice Alito:

> "Abortion presents a profound moral issue on which Americans hold sharply conflicting views. Some believe fervently that a human person comes into being at conception and that abortion ends an innocent life. Others feel just as strongly that any regulation of abortion invades a woman's right to control her own body and prevents women from achieving full equality. Still others in a third group think that abortion should be allowed under some but not all circumstances, and those within this group hold a variety of views about the particular restrictions that should be imposed." *Id. at* 223–25.

*Dobbs* rejects the Attorney General's extremist statement that there is a fundamental right to an abortion in the U.S. Constitution. *Id* ("The Constitution does not confer a right to abortion.") (Reference to video omitted.)

*National Rifle Association* rejects the type of Attorney General's extremist defamatory and libelous type statements that an organization as First Choice is an "extremist organization" and

1

the Supreme Court also rejected the Attorney General's attempt to alienate its donors by labeling them the same. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 184 (2024). (Reference omitted.)

A mission of First Choice is to provide information on giving birth to life, and clearly the distorted personal mission of the Attorney General pro-abortion extremist is to deny life and attempt to silence First Choice and its donors.

FBI Director Christoper Wray recently testified to the House Judiciary Committee that the FBI is investigating pro-abortion extremist since the overturning of *Roe v. Wade* in 2022. Peter Pidedo, *FBI Director Denies Targeting Pro Life Activists*, National Catholic Register, July 25, 2024.

To the extent the record clearly shows the Attorney General is an pro-abortion extremist, the Court should appoint a Rule 53 Special Master to investigate the extreme nature of the Attorney General in this matter and refer him to the FBI for investigation consistent with the Bureau's investigation of pro-abortion extremists.

The underlying principles to the removal statute under 28 U.S.C. 1441 addresses concerns that a state court may be biased or prejudice. The extreme nature of the Attorney General in this matter only compounds those concerns about litigation in a state court. Here if the Superior Court Judge would rule against the New Jersey Attorney General on the topic, her Honor's legal career would be finished, just as the Attorney General and many other pro-abortion extremists attack the United States Supreme Court and in effect seek the removal the Justices for issuing *Dobbs*.

Federal Rule of Civil Procedure 24 sets forth the requirements for both interventions as of right and permissive intervention. Rule 24(a) states:

> "the [C]ourt must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Rule 24(b) states: "the [C]ourt may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."

Federal Rule of Civil Procedure 24(b)(1)(A) has been criticized as incoherent. *PrimeSource Bldg. Prod., Inc. v. United States,* 494 F. Supp. 3d 1307, 1328 (Ct. Int'l Trade 2021) The structure of standing law in the federal courts has also long been criticized as incoherent. *State v. Becerra*, 544 F. Supp. 3d 1241, 1251 (M.D. Fla. 2021) *quoting* William Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 221 (1988)

Federal Rule of Civil Procedure 45 (d) (3) identifies circumstances when a court is required to quash a subpoena. The rule states:

"The subpoena power is a substantial delegation of power… and those who invoke it have a grave responsibility to ensure it is not abused." *Theofel v. Farey-JonesI,* 359 F.3d 1066, 1074 (9th Cir. 2004). The Attorney General did not meet that responsibility here. The burden of issuing the subpoena is on the Attorney General who failed to meet that burden. The Attorney General has yet to justify why the State, or he himself in his individual capacity needs the list of donors.

The Attorney General going after Donors defies logic as the Donors' interests should have already been protected and the Attorney General's actions should not have gone this far considering the Supreme Court's protection of donors in *Americans for Prosperity Found, v. Bonda,* 594 U.S. 595 (2021). Ironically in that consolidated case Vice President Kamala Harris, then California's Attorney General, cost the state nearly three million dollars in attorney fees and approximately seventy-seven thousand dollars in costs for targeting donors. *Thomas More L. Ctr. V. Bonta,* 2:15-cv-03048, 2022 WL 971946 (C.D. Cal. Mar. 28, 2022).

While the Court here is not tasked with redefining moral law, the Court could take Judicial Notice that opposition to abortion (or supporting a family's right to give birth) is both a religious and non-religious issue as opposition to abortion is shared among others by Atheists, Christians, Jews, and Muslims. (References omitted.)  Movant will defer to the Attorney General about the position of Satanist and Pagan "religions." *C.f.,* Sarah A. Rumage, *Resisting the West: The Clinton Administration's Promotion of Abortion at the 1994 Cairo Conference and the Strength of the Islamic Response,* 27 Cal. W. Int'l L.J. 1, 100 (1996) *citing* Alfred G. Boylan, Of Ferraro, Cuomo, and Moral Issues Confused with Dogma (Letter to the Editor), N.Y. Times, Sept. 9, 1984, at D24. ("Opposition to abortion is not a religious belief. It is one of many moral issues which the Catholic Church has taken a stand on-as have other faiths and other groups with no Catholic connection.") This is not to suggest that the subpoena does not violate the right to freedom of expression of religion for many as the subpoena does violate religious liberties.

In *Roe v. Wade,* abortion meant "the termination of human pregnancy with an intention other than to produce a live birth or to remove a dead fetus." (Reference omitted.) An abortionist killing a live fetus and then removing the dead fetus he or she just killed does not mean its not an abortion, even if legally it should be classified as a more serious offense. Regardless of whether or not "some abortions" are cruel, they are not unusual considering one statistic that 625,978 abortions were reported to the CDC for 2021. *Morbidity and Mortality Weekly Report,* Surveillance Summaries, cdc.gov, November 24, 2023. Ironically the number of "reported" abortions is not far from the leading cause of death as 702,880 people died of heart disease in the United States in 2022. *Heart Disease in the United States,* cdc.gov, May 15, 2024, the latter much time and effort that the Medical field attempts to prevent deaths from happening, the former the attorney general much time and effort spent to ensure more deaths happen.

Since the Attorney General raises the issue, it is not clear why the truth about abortions "hurts so much" to the point that the Attorney General does not want the public to have access to information about the obvious, but the Attorney General would rather try and silence organizations such as First Choice and its donors, particularly since the Courts have recognized the harsh realities of partial birth abortion where it does not appear vague: "the abortionist takes a pair of scissors and inserts the scissors into the back of the skull and then opens the scissors up to make a gap in the back of the skull in order to insert a catheter to literally suck the brains from

4

the back of that child's head. That is what happens in the so-called partial-birth abortion." *Sabelko v. City of Phoenix,* 68 F.3d 1169, 1173 (9th Cir. 1995), *cert. granted, judgment vacated,* 519 U.S. 1144, 117 S. Ct. 1077, 137 L. Ed. 2d 212 (1997), and *opinion withdrawn,* 120 F.3d 161 (9th Cir. 1997), *as amended* (Aug. 1, 1997). The Attorney General provides pages and pages from First Choice's website that provide a basis for the Court to encourage First Choice to continue doing its efforts without the unconstitutional overburdening that the Attorney General seeks to impose.

Based on the issues raised by the Attorney General and what it provide from First Choice, the Court may want to revisit its previous holding that New Jersey's law prohibiting the "partial - birth abortion" procedure was impermissibly vague. *Planned Parenthood of Central New Jersey v. Verniero,* 41 F.Supp.2d 478 (D.N.J.1998), *aff'd sub nom. Planned Parenthood of Central New Jersey v. Farmer,* 220 F.3d 127 (3d Cir.2000). Perhaps the confusion is compounded by "vagueness" ranging from Justice Ginsberg recognition of the difference between male and females, to Justice Jackson indicating she was not sure of the difference, to the Attorney General's client indicating that males can get pregnant. *See e.g.,* Mark Edward Blankenship Jr., *"I'm Not A Biologist": A Hayekian Perspective on the Judge's Implementation of Knowledge and the Umpire Analogy,* 20 Rutgers J.L. & Pub. Pol'y 77, 94 (2023); *see also* Valerie Richardson, *Planned Parenthood doctor tells committee that "men can have pregnancies",* The Washington Times, September 29, 2022.

It was clearly unnecessary for the Attorney General to attack the Plaintiffs and target its donors, particularly if the Attorney General considered the "emotional" being of those the Attorney General is attempting to prevent from exposure to the truth. Consider that born alive abortions," are undoubtedly unlawful under federal law. *United States v. Handy,* No. CR 22-096-1, 2023 WL 5348660, at *1 (D.D.C. Aug. 21, 2023); and consider too that a "fetus can be alive at the beginning of the dismemberment process and can survive for a time while its limbs are being torn off…[w]hen you pull out a piece of the fetus, let's say, an arm or a leg and remove that, at the time just prior to removal of the portion of the fetus, ... the fetus [is] alive. ... observed fetal heartbeat via ultrasound with "extensive parts of the fetus removed, … mere dismemberment of a limb does not always cause death because he knows of a physician who removed the arm of a fetus only to have the fetus go on to be born 'as a living child with one arm.'" *Stenberg v. Carhart,* 530 U.S. 914, 959 (2000) (Kennedy, J. dissent.)

Since the Courts have written on the subject, logic would suggest that supporting an organization that at least provides information on alternative considerations to sucking the brains out of a baby in the birth canal is a noble thing. The Court may equally find that what the Attorney General raises supports recognizing the unborn as a "person" under the United States Constitution, since *Dobbs* overturned *Roe* where Justice Blackburn determined a person did not include the unborn. (Reference omitted.) *C.f., Stenberg, infra.* There is no form of decency to deny the truth about alternatives for pregnant women that the Attorney General hopes to silence by enforcing his unconstitutional warrant masked as a subpoena.

The New Jersey Attorney General makes no effort of "lesser intrusive measures" to seek from the United States Internal Revenue Service, anyone who has claimed deductions for donations to Plaintiff, as Defendant knows he would fail there, as they should here. (Reference omitted.) The

5

the back of that child's head. That is what happens in the so-called partial-birth abortion." *Sabelko v. City of Phoenix,* 68 F.3d 1169, 1173 (9th Cir. 1995), *cert. granted, judgment vacated,* 519 U.S. 1144, 117 S. Ct. 1077, 137 L. Ed. 2d 212 (1997), and *opinion withdrawn,* 120 F.3d 161 (9th Cir. 1997), *as amended* (Aug. 1, 1997). The Attorney General provides pages and pages from First Choice's website that provide a basis for the Court to encourage First Choice to continue doing its efforts without the unconstitutional overburdening that the Attorney General seeks to impose.

Based on the issues raised by the Attorney General and what it provide from First Choice, the Court may want to revisit its previous holding that New Jersey's law prohibiting the "partial - birth abortion" procedure was impermissibly vague. *Planned Parenthood of Central New Jersey v. Verniero,* 41 F.Supp.2d 478 (D.N.J.1998), *aff'd sub nom. Planned Parenthood of Central New Jersey v. Farmer,* 220 F.3d 127 (3d Cir.2000). Perhaps the confusion is compounded by "vagueness" ranging from Justice Ginsberg recognition of the difference between male and females, to Justice Jackson indicating she was not sure of the difference, to the Attorney General's client indicating that males can get pregnant. *See e.g.,* Mark Edward Blankenship Jr., *"I'm Not A Biologist": A Hayekian Perspective on the Judge's Implementation of Knowledge and the Umpire Analogy,* 20 Rutgers J.L. & Pub. Pol'y 77, 94 (2023); *see also* Valerie Richardson, *Planned Parenthood doctor tells committee that "men can have pregnancies",* The Washington Times, September 29, 2022.

It was clearly unnecessary for the Attorney General to attack the Plaintiffs and target its donors, particularly if the Attorney General considered the "emotional" being of those the Attorney General is attempting to prevent from exposure to the truth. Consider that born alive abortions," are undoubtedly unlawful under federal law. *United States v. Handy,* No. CR 22-096-1, 2023 WL 5348660, at *1 (D.D.C. Aug. 21, 2023); and consider too that a "fetus can be alive at the beginning of the dismemberment process and can survive for a time while its limbs are being torn off…[w]hen you pull out a piece of the fetus, let's say, an arm or a leg and remove that, at the time just prior to removal of the portion of the fetus, ... the fetus [is] alive. ... observed fetal heartbeat via ultrasound with "extensive parts of the fetus removed, … mere dismemberment of a limb does not always cause death because he knows of a physician who removed the arm of a fetus only to have the fetus go on to be born 'as a living child with one arm.'" *Stenberg v. Carhart,* 530 U.S. 914, 959 (2000) (Kennedy, J. dissent.)

Since the Courts have written on the subject, logic would suggest that supporting an organization that at least provides information on alternative considerations to sucking the brains out of a baby in the birth canal is a noble thing. The Court may equally find that what the Attorney General raises supports recognizing the unborn as a "person" under the United States Constitution, since *Dobbs* overturned *Roe* where Justice Blackburn determined a person did not include the unborn. (Reference omitted.) *C.f., Stenberg, infra.* There is no form of decency to deny the truth about alternatives for pregnant women that the Attorney General hopes to silence by enforcing his unconstitutional warrant masked as a subpoena.

The New Jersey Attorney General makes no effort of "lesser intrusive measures" to seek from the United States Internal Revenue Service, anyone who has claimed deductions for donations to Plaintiff, as Defendant knows he would fail there, as they should here. (Reference omitted.) The

5

Attorney General attempts to prey upon and seek relief from an incestuous "friendly state court system", instead of facing the obvious fact of their violation of the United States Constitution in the Federal Court System. The Attorney General's actions and its unconstitutional search warrant masked as an "administrative subpoena" violates *inter alia*, Article IV, the First Amendment and Fourteenth Amendment to the United States Constitution. Allowing the subpoena to continue will only create irreparable harm that an injunction and quash is designed to prevent.

While reasonable minds can disagree. the Attorney General's actions are unfortunately unreasonable, arbitrary and capricious and unconstitutional and on that basis the Court should protect the identity of plaintiff donors by granting the Motion to Intervene and Grant the Motion to Quash the Attorney General's subpoena.

Accordingly the motion to intervene to quash the subpoena should be granted and the state court proceedings stayed consistent with the quashing of the subpoena.

Respectfully submitted,

Michael S. Barth
Movant *Pro Se*